UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            -against-<br><br>JOHN HOBBY JOHNSON,<br><br>                           Defendant. | **ORDER**<br><br>94 Cr. 631 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

          This Order addresses Defendant John Hobby Johnson's January 22, 2021 motion for compassionate release.[1] For the reasons stated below, the Defendant's application will be denied.

I. **BACKGROUND**

          On April 1, 1996, Hobby Johnson pled guilty to Counts One and Two of the (S12) Information before the Honorable Allen G. Schwartz.  ((S12) Information (Dkt. No. 499-1); Plea Agreement (Dkt. No. 499-2); Plea Tr. (Dkt. No. 499-4) at 29)[2]  Count One of the (S12) Information charges Hobby Johnson with participating in a racketeering enterprise – the "142nd Street and Lenox Avenue Crew" – in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  Count One lists two predicate acts of racketeering:  conspiracy to murder Ronald Hill, in violation of New York Penal Law Sections 105.15 and 125.25; and conspiracy to murder Robert Travis Reeves, in violation of New York

---

[1] Although the charging instrument, plea agreement, plea transcript, and judgment all refer to Defendant as "John Hobby Johnson" ((S12) Information (Dkt. No. 499-1); Plea Agreement (Dkt. No. 499-2); Plea Tr. (Dkt. No. 499-4); Judgment (Dkt. No. 499-3)), the Pre-Sentence Report and sentencing transcript indicate that the Defendant's true name is "John Hobby."  (See PSR ¶ 74; Sent. Tr. (Dkt. No. 523) at 9)  This Order refers to Defendant as "Hobby Johnson."

[2] The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

Penal Law Sections 105.15 and 125.25.  ((S12) Information (Dkt. No. 499-1) at 4-5)  Count Two charges Hobby Johnson with using and carrying a firearm "during and in relation to a crime of violence, to wit, the murder in aid of racketeering of Donald Moore, a/k/a 'Duck,'" in violation of 18 U.S.C. § 924(c).  (Id. at 5)

On September 18, 1996, Judge Schwartz sentenced Hobby Johnson to 20 years' imprisonment on Count One and to five years' imprisonment on Count Two, with those terms to run consecutively.  (Judgment (Dkt. No. 499-3) at 3)

Hobby Johnson's guilty plea and sentence arise from his involvement in the "142nd Street and Lenox Avenue Crew", also called the 142nd Street Lynchmob Crew (the "Gang"), "which engaged in [large-scale] narcotics trafficking, murders, attempted murders, robberies and assaults" in and around Harlem during the late 1980s and early 1990s.  (PSR ¶ 1)  The Gang distributed hundreds of kilograms of powder and crack cocaine in Harlem and elsewhere.  (Id. ¶¶ 26-28)  Hobby Johnson, as a Gang member, helped the Gang maintain control over the Harlem neighborhood in which it sold drugs, committing acts of violence against rival drug dealers.  (Id. ¶ 30)  During his time as a Gang member, Hobby Johnson committed, or conspired to commit, five murders.  (Id. ¶¶ 35-38)

In November 1989, Hobby Johnson shot to death Donald Moore, a/k/a "Duck," after Moore had robbed one of the Gang's crack distribution locations.  (Id. ¶ 34)  In November 1988, Hobby Johnson conspired to kill Ronald Hill, who was murdered by another Gang member.  (PSR ¶ 35)  In July 1991, Hobby Johnson went to Morningside Park intending to kill Robert Travis Reeves, a rival drug dealer who presented a threat to the Gang's drug trafficking operations.  Inside the park, Hobby Johnson located an individual who matched the description

of Reeves. He shot to death that individual, who turned out not to be Reeves. Other Gang members killed Reeves a week later. (Id. ¶ 36)

In March 1994, a dispute arose between Gang members and Harold Brown, who had supplied drugs to the Gang and was demanding payment. Charles Leon Brown and Louis Griffin, leaders of the Gang, instructed two Gang members – Farris Phillips and Clifford Randall – to kill Brown. Phillips shot Brown fifteen times, but Brown survived. While Brown was being treated at Harlem Hospital, Hobby Johnson, Griffin, and Phillips – dressed as medical personnel – went to the hospital armed with a knife, intending to murder Brown. (Id. ¶¶ 37-38)

At sentencing, Hobby Johnson faced a Sentencing Guidelines range premised on the statutory maximum – 20 years' imprisonment – on the RICO count, along with a mandatory consecutive term of five years' imprisonment on the Section 924(c) count. (Id. ¶¶ 99-101; Sent. Tr. (Dkt. No. 523) at 12-13) On September 18, 1996, Judge Schwartz sentenced Hobby Johnson to 20 years' imprisonment on Count One and to five years' imprisonment on Count Two, with those terms to run consecutively. (Sent. Tr. (Dkt. No. 523) at 16)

Hobby Johnson has been in custody since July 21, 1994; he is currently incarcerated at the Federal Correctional Institution Fort Dix ("Fort Dix"). (PSR ¶ 92; Def. Br. (Dkt. No. 517) at 2) His projected release date is April 17, 2025. (Def. Br. (Dkt. No. 517) at 2; Govt. Jan. 29, 2021 Ltr. (Dkt. No. 519) at 2)[3]

---

[3] Hobby Johnson was writted into federal custody – from New York state custody – on July 21, 1995. (PSR at 1) He was in state custody as the result of committing robbery in the second degree, for which he received an indeterminate state sentence of four to eight years' imprisonment. (Id. ¶ 71) Hobby Johnson's federal sentence did not begin to run until he completed his state sentence. (Sent. Tr. (Dkt. No. 523) at 13-14, 20)

## II. HOBBY JOHNSON'S COMPASSIONATE RELEASE APPLICATION

On November 9, 2020, Hobby Johnson applied to the warden of Fort Dix for compassionate release. Hobby Johnson states that he "was informed that because so many requests were received as a result of the [COVID-19] outbreak, the Warden is not accepting any additional requests." (Def. Br. (Dkt. No. 517) at 3)

On January 22, 2021, Defendant filed a motion with this Court for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Def. Br. (Dkt. No. 517)) Hobby Johnson contends that he is entitled to compassionate release because of recent outbreaks of the COVID-19 virus at Fort Dix. (Id. at 3, 6) According to Hobby, he is particularly vulnerable to a "severe illness from COVID-19" because he "has a [Body Mass Index] of 32.2 and also suffers from anemia and hypertension." (Id. at 6) The Defendant also contends that the Section 3553(a) factors favor his release. (Id. at 7)

The Government agrees that Hobby Johnson has exhausted his administrative remedies, but nonetheless opposes his application. According to the Government, the Defendant – who "received the first dose of the COVID-19 vaccine on January 21, 2021" – has not demonstrated "extraordinary and compelling reasons" that warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Govt. Jan. 29, 2021 Ltr. (Dkt. No. 519) at 1) The Government also contends that the Section 3553(a) factors do not favor release, citing "the seriousness of the [Defendant's] offense[s] and the danger to the community posed by the [D]efendant." (Id.)

## DISCUSSION

### I. LEGAL STANDARD

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A)(i) – provides that a court may

4

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . , reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to the statute, a defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." (Id.)

Where a defendant has exhausted his administrative remedies, a court considering an application for compassionate release must weigh the factors set forth in 18 U.S.C. § 3553(a) and determine whether there are "extraordinary and compelling reasons [that] warrant . . . a [sentence] reduction." (Id.) "[T]he district court has broad discretion in evaluating a defendant's motion for compassionate release," United States v. Vargas, No. 88-CR-325 (VEC), 2020 WL 6886646, at *3 (S.D.N.Y. Nov. 24, 2020), and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them . . . ." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

## II. ANALYSIS

While the parties agree that Hobby Johnson has exhausted his administrative remedies (Def. Br. (Dkt. No. 517) at 3-4; Govt. Jan. 29, 2021 Ltr. (Dkt. No. 519) at 1), they disagree as to whether (1) the Defendant has demonstrated "extraordinary and compelling reasons" that warrant a sentence reduction; and (2) the Section 3553(a) factors favor a sentence reduction.

5

A. **<u>Section 3553(a) Factors</u>**

18 U.S.C. § 3553(a) directs a sentencing court to consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At sentencing, Judge Schwartz noted that Hobby Johnson "certainly has accepted responsibility for his crimes," "allocuted completely and truthfully," and "timely . . . provide[d]

complete information to the government." (Sent. Tr. (Dkt. No. 523) at 15)  However, Judge Schwartz characterized the twenty-five year sentence authorized in the plea agreement as "more than reasonable" – it "is generous." (Id.)  Given the crimes Hobby Johnson admitted having committed, "a much, much higher sentence would have been appropriate [under the Sentencing Guidelines]." (Id. at 16)  Judge Schwartz acknowledged that he was "bound" by the statutory maximum sentences applicable to the crimes that the Defendant had been permitted to plead guilty to. (Id.)

Hobby Johnson now contends that the Section 3553(a) factors favor his immediate release, because he has had a positive adjustment to incarceration, and any further rehabilitation will be hampered by pandemic-related lockdowns. (Def. Br. (Dkt. No. 517) at 7-8)  While in custody, Hobby Johnson has participated in Bureau of Prisons programming, including courses on bookkeeping, accounting, and business. (Def. Br., Ex. D (Dkt. No. 517))  He has also taken a commercial drivers' license course. (Id.)  And Defendant represents that "[h]e has employment opportunities awaiting him." (Def. Br. (Dkt. No. 517) at 9)

Hobby Johnson further argues that he is "similarly situated" to co-defendant Farris Phillips, whose sentence was recently reduced to time-served. (Id. at 8-9)  Finally, Hobby Johnson argues that he is less culpable than co-defendant Louis Griffin, who is scheduled for release before Hobby. (Id. at 8)

It is clear from the sentencing transcript that Judge Schwartz carefully considered the Section 3553(a) factors. (Sent Tr. (Dkt. No. 523) at 15-18)  As to the nature of Hobby's offenses, he committed or conspired to commit five murders.  He was part of the 142nd Street Lynchmob Crew for seven years or more, and repeatedly committed serious, cold-blooded, premeditated acts of violence to protect the Gang's narcotics trafficking operation. (PSR ¶¶ 5-8,

25-38) And Hobby Johnson had convictions for reckless endangerment, criminal possession of a weapon, and second-degree robbery before his conviction in the instant case. (Id. ¶¶ 69-71)

At sentencing, Judge Schwartz balanced the Defendant's lengthy history of serious and violent crimes against the mitigating factors, including the "timely" and "complete information" Hobby Johnson had provided to the Government. (Sent. Tr. (Dkt. No. 523) at 15) In imposing an aggregate sentence of twenty-five years' imprisonment, Judge Schwartz correctly observed that, given Hobby Johnson's involvement in multiple premeditated murders, he would have been subject – under the Sentencing Guidelines – to a much longer sentence absent the plea agreement. (Id. at 15-16)

That the Defendant has made productive use of his time at Fort Dix does not alter the extremely grave nature of his criminal conduct.

Having considered all of the Section 3553(a) factors, including the Defendant's longtime participation in the affairs of a violent, large-scale drug trafficking gang, his personal involvement in multiple murders, his criminal record, and the need for both specific and general deterrence, the Court concludes that the Section 3553(a) factors militate against Defendant's application for compassionate release.

B. **"Extraordinary and Compelling Reasons"**

In order to prevail on his compassionate release motion, Hobby Johnson must demonstrate that "extraordinary and compelling reasons warrant . . . a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A).

Here, Hobby Johnson argues that he is entitled to compassionate release because he suffers from pre-hypertension, anemia, and obesity, and these conditions put him at greater risk of contracting the COVID-19 virus, and give him a poorer prognosis if he is infected. (Def.

8

Br. (Dkt. No. 517) at 6-7) Hobby also asserts that, given the spread of the COVID-19 virus amongst the inmates and staff at Fort Dix – where he is housed – he is at particular risk. (Id. at 6)

There is no question that COVID-19 presents an enormous risk to inmates. See United States v. Stephens, 447 F. Supp. 3d 63, 65 (S.D.N.Y. 2020) (citing United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020)). Nor is there any question that the inmates and staff at Fort Dix are facing significant challenges as a result of the COVID-19 pandemic. (See Def. Br., Ex. B (Dkt. No. 517)) At the beginning of February, 210 inmates and 35 staff members at Fort Dix tested positive for the COVID-19 virus[4]; a staggering 1,631 inmates at Fort Dix have recovered from the COVID-19 virus; and one inmate has died as a result of contracting the COVID-19 virus. See Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed Feb. 18, 2021).

There is likewise no dispute here that Hobby Johnson suffers from obesity (Def. Br. (Dkt. No. 517) at 6; Ex. C; PSR ¶ 84; Govt. Jan. 29, 2021 Ltr. (Dkt. No. 519) at 6)[5] – defined as a BMI of 30 or above – or that those who suffer from obesity face an "increase[d] risk of severe illness from COVID-19." Centers for Disease Control and Prevention, People with

---

[4] As of today's date, the number of inmates testing positive for COVID-19 has fallen to 37. See Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed Feb. 18, 2021).

[5] Although the Government does not dispute that Hobby Johnson suffers from obesity, there is a discrepancy between the body mass index ("BMI") that Defendant calculates – 32.2 – and that the Government calculates – 31.3 – because the parties differ as to Hobby Johnson's height. (See Def. Br. (Dkt. No. 517) at 6 (stating that Hobby Johnson is 5'8" tall); Govt. Jan. 29, 2021 Ltr. (Dkt. No. 519) at 6 (stating that Hobby Johnson is 5'9" tall))

9

Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 18, 2021).[6]

Acknowledging that Defendant's obesity constitutes a risk factor for contracting the COVID-19 virus, and for a poorer prognosis if infected, Hobby Johnson has not demonstrated that "extraordinary and compelling reasons" justify his release. As the Government points out, Hobby Johnson has recently received a first dose of the COVID-19 vaccine, and he is expected to receive a second dose in the coming weeks. (Govt. Jan. 29, 2021 Ltr. (Dkt. No. 519) at 6) The Defendant's vaccination mitigates the risks that he would otherwise face from the COVID-19 virus.

\*     \*     \*     \*

The Court concludes that the Section 3553(a) factors militate against granting the Defendant's motion, and that he has not proffered "extraordinary and compelling reasons" justifying his release.

## CONCLUSION

For the reasons stated above, Defendant's application for compassionate release pursuant to 18 U.S.C § 3582(c)(1)(A)(i) is denied.

Dated: New York, New York
       February 18, 2021

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

---

[6] Although Defendant also contends that his anemia and pre-hypertension make him more vulnerable to the COVID-19 virus, these conditions have not been identified by the CDC as conditions that increase the risk of severe illness from COVID-19. (Id.)